UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT GRANO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SODEXO MANAGEMENT, INC., a New York Corporation; and CARGILL MEAT SOLUTIONS CORP., a Delaware Corporation,<br><br>Defendants.<br><br>AND ALL RELATED CASES | Case No.:  18-CV-1818 TWR (BLM)<br><br>**ORDER (1) GRANTING THE AMENDING PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS, (2) DENYING AS MOOT DEFENDANT US FOODS' MOTIONS TO DISMISS, AND (3) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE**<br><br>(ECF Nos. 184, 187, 191, 194–200, 238) |

Presently before the Court are several fully briefed motions in these eight consolidated actions:[1] Plaintiffs Vincent Grano, Tristan Abbott, Bailey Anderson, Michael

---

[1] On March 9, 2020, the Honorable Gonzalo P. Curiel consolidated the following cases: *Abbott v. Sodexo Mgmt., Inc.*, No. 19-CV-1917 TWR (BLM) (S.D. Cal. filed Oct. 2, 2019); *Miller v. Sodexo Mgmt., Inc.*, No. 19-CV-1909 TWR (BLM) (S.D. Cal. filed Oct. 2, 2019); *Lader v. Sodexo Mgmt., Inc.*, No. 19-CV-1908 TWR (BLM) (S.D. Cal. filed Oct. 2, 2019); *Evers v. Sodexo Mgmt., Inc.*, No. 19-CV-1907 TWR (BLM) (S.D. Cal. filed Oct. 2, 2019); *Browning v. Sodexo Mgmt., Inc.*, No. 19-CV-1905 TWR (BLM) (S.D. Cal. filed Oct. 2, 2019); *Baker v. Sodexo Mgmt., Inc.*, No. 19-CV-1904 TWR (BLM) (S.D. Cal. filed Oct. 2, 2019); *Anderson v. Sodexo Mgmt., Inc.*, No. 19-CV-1903 TWR (BLM) (S.D. Cal. filed Oct. 2, 2019); and *Grano v. Sodexo, Inc.*, No. 18-CV-1818 TWR (BLM) (S.D. Cal. filed Aug. 3, 2018).  (*See* ECF No. 79.)  Judge Curiel designated *Grano* as the lead case.  (*See id.*)

Baker, Hunter Browning, Chase Evers, Conner Lader, and Frank Miller's Motion to Strike Defendant Sodexo Management, Inc.'s Affirmative Defenses ("Mot. to Strike," ECF No. 187); Amending Plaintiffs Abbott, Anderson, Baker, Browning, Evers, Lader, and Miller's Motion for Leave Under FRCP 15(a)(2) to File Amended Complaints ("Mot. to Amend," ECF No. 191); and Defendant US Foods' Motions to Dismiss Plaintiffs Miller's, Evers', Lader's, Browning's, Anderson's, Baker's, and Abbott's Second Amended Complaints (ECF Nos. 194–200, respectively, and the "Motions to Dismiss," collectively).  The Court held a hearing on November 20, 2020.  (*See* ECF No. 247.)  Having carefully considered Sodexo's Answer to Plaintiff Grano's Third Amended Complaint (ECF No. 184 ("Ans.")), the Amending Plaintiffs' Proposed Third Amended Complaints (ECF Nos. 191-3–9), the Parties' arguments, and the law, the Court **GRANTS** the Amending Plaintiffs' Motion to Amend, **DENIES AS MOOT** US Foods' Motions to Dismiss, and **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Strike, as follows.

## BACKGROUND

### I. *Escherichia Coli*

*Escherichia coli* is a family of bacteria, most members of which do not cause human disease.  (ECF No. 191-3 ("Proposed Abbott Compl.") ¶ 43.[2])  The *E. coli* O157:H7 (or "STEC") strain, however, can cause bloody diarrhea in humans and has a reputation as a significant health hazard.  (*Id.*)

*E. coli* O157:H7 is notable for its extremely low infectious dose, with as few as fifty bacteria capable of causing illness in a child.  (*Id.* ¶ 44.)  Approximately two to four days (and up to ten days) after ingestion, (*id.* ¶ 46), the bacteria attach to the inside surface of the large intestine, where they initiate an inflammatory reaction resulting in vomiting, diarrhea that can be bloody, and abdominal cramps.  (*Id.* ¶¶ 45–46.)  *E. coli* infections range from mild to life-threatening.  (*See id.* ¶ 47.)

---

[2] Although each of the Amending Plaintiffs has filed his own Proposed Third Amended Complaint, the allegations are substantially similar.  (*See* ECF Nos. 191-3–9.)  The Court therefore cites to Tristan Abbott's Proposed Third Amended Complaint as a representative sample.

Although most cases are mild and resolve within about a week without long-term effects, (*id.*), approximately ten percent of those infected develop a severe, potentially life-threatening complication called hemolytic uremic syndrome ("HUS"). (*See id.* ¶ 48.) HUS results in the destruction of red blood cells and platelets in the blood, which can result in clots that occlude the filtering units of the kidneys, leading to acute renal failure. (*See id.* ¶ 48.) Because antibiotics do not aid in combating *E. coli* infections, therapy is supportive. (*See id.* ¶ 47.) There is no known therapy to halt the progression of HUS, which has a mortality rate of approximately five percent. (*Id.* ¶ 49.)

## II.    October 2017 STEC Outbreak at Camp Pendleton

In October 2017, an outbreak of Shiga toxin-producing *E. coli* O157:H7 and O26 at United States Marine Corps Base Camp Pendleton (Edson Range) and the Marine Corp Recruit Depot sickened at least 244 Marine Corps recruits, including Plaintiffs. (*See* Proposed Abbott Compl. ¶¶ 8, 10.) Fifteen of those recruits developed HUS. (*Id.* ¶ 9.) By November 2017, all eight Plaintiffs to these consolidated actions had been hospitalized. (*See* ECF No. 202 ("US Foods Opp'n") at 8; *see also, e.g.*, Proposed Abbott Compl. ¶¶ 52–54.)

Investigators from multiple public health agencies, including the Centers for Disease Control ("CDC"), conducted studies into the circumstances of the outbreak. (Proposed Abbott Compl. ¶ 12.) The investigators inspected the recruits' sleep quarters, bathroom facilities, and the cafeterias, (*see id.*), and interviewed forty-three STEC patients and 135 healthy controls and other personnel. (*Id.* ¶ 13.)

The CDC issued its report (the "CDC Report") on January 23, 2018.[3] (*See id.* ¶ 15.) The CDC Report revealed a statistically significant association between illness and the

---

[3] The Amending Plaintiffs append a copy of the CDC Report to their Motion to Amend. (*See* Mot. to Amend Ex. H (ECF No. 191-10.) Because the Amending Plaintiffs refer extensively to the CDC Report in their Proposed Third Amended Complaints and because the CDC Report forms a basis for their claims, the Court may treat the CDC Report as incorporated by reference into the Proposed Third Amended Complaints. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002–03 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019).

18-CV-1818 TWR (BLM)

consumption of undercooked beef.  (*See id.* ¶ 13.)  Plaintiffs allege that the STEC-contaminated ground beef patties responsible for the outbreak were served to recruits in the cafeteria on October 21, 2017.  (*See id.* ¶ 18.)

Defendant Cargill Meat Solutions Corp. manufactured and produced the patties, (*see id.*), which were then received, stored, and refrigerated by US Foods prior to distribution to Defendant Sodexo.  (*See id.* ¶ 19.)  Sodexo, which is under contract to provide foodservice at all Marine garrisons and mess halls, (*see id.* ¶¶ 23–25), allegedly prepared undercooked hamburgers and cheeseburgers from the STEC-contaminated ground beef patties on October 21, 2017.  (*See, e.g.*, *id.* ¶ 22.)  The recruits began falling ill October 24, 2017.  (*See id.* ¶ 11.)

### III.    The Healio Article and Plaintiffs' Investigation

The Amending Plaintiffs allege that they did not learn, and could not have learned, about the conclusions of the CDC Report until April 24, 2018, when an article titled "*E. coli* outbreak in Marine recruits associated with undercooked beef" was published on the website www.healio.com.  (Proposed Abbott Compl. ¶¶ 56, 59.)  Plaintiff Grano sent a Freedom of Information Act ("FOIA") request to the CDC on July 12, 2018.  (*See id.* ¶ 57.)  On October 18, 2028, Plaintiffs' counsel received the CDC Report and other records in response to their FOIA request.  (*See id.*)

### IV.    Procedural Background

Plaintiff Grano filed the first of these consolidated lawsuits against Sodexo on August 3, 2018.  (*See generally* ECF No. 1.)  On May 30, 2019, Sodexo produced invoices from US Foods to Sodexo in response to Plaintiff Grano's requests for production of documents.  (*See* Mot. to Strike at 4.)  The Amending Plaintiffs filed their individual actions on October 2, 2019.  (*See id.*)

On February 21, 2020, Sodexo sought leave to file a third-party complaint against US Foods for negligence, (*see* ECF No. 71), which Plaintiffs originally opposed.  (*See* ECF No. 81.)  On March 2, 2020, however, the Amending Plaintiffs sought leave to file amended complaints adding US Foods as a defendant.  (*See* Mot. to Strike at 4.)  The Honorable

Gonzalo P. Curiel granted both motions on May 4, 2020, (*see* ECF No. 126), and the Amending Plaintiffs filed their First Amended Complaints in their respective actions on May 7, 2020.  (*See* Mot. to Strike at 4.)

US Foods moved to dismiss the claims alleged against it in the First Amended Complaint on June 5, 2020, arguing that the Amending Plaintiffs' claims were time-barred. (*See id.*)  On July 6, 2020, the Amending Plaintiffs moved for leave to file further amended complaints to add requests for punitive damages against Sodexo.  (*See* ECF No. 161.)  The following day, the Amending Plaintiffs' counsel informed US Foods' counsel of the Amending Plaintiffs' intent to file a motion for leave to amend their complaints to add allegations responsive to US Foods' June 5, 2020 motions to dismiss.  (*See* Mot. to Strike at 5.)

On August 18, 2020, Judge Curiel granted the Amending Plaintiffs leave to file amended complaints, (*see* ECF No. 175), and the Amending Plaintiffs filed their operative Second Amended Complaints in their respective actions on August 24, 2020.  Sodexo answered Plaintiffs' operative complaints on September 4, 2020, (*see, e.g.*, ECF No. 184), and Plaintiffs filed the instant Motion to Strike several of Sodexo's affirmative defenses on September 14, 2020.  (*See* ECF No. 187.)

After obtaining new counsel, (*see* ECF Nos. 180–83, 186), US Foods renewed its motions to dismiss in the individual actions on September 8, 2020,[4] following which the Amending Plaintiffs filed the instant Motion to Amend.  (*See* ECF No. 191.)

## MOTION TO AMEND

### I.   Legal Standard

Under Federal Rule of Civil Procedure 15(a), a plaintiff may amend his or her complaint once as a matter of course within specified time limits.  Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written

---

[4] On September 22, 2020, Judge Curiel ordered US Foods to withdraw the motions to dismiss in the individual actions and to refile them in the lead case, *Grano*.  (*See* ECF No. 193; *see also* ECF Nos. 194–200.)

consent or the court's leave.  The court should freely give leave when justice so requires."
Fed. R. Civ. P. 15(a)(2).

"Rule 15's policy of favoring amendments to pleadings should be applied with
'extreme liberality,'" *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (citing
*Rosenberg Brothers & Co. v. Arnold*, 283 F.2d 406 (9th Cir. 1960) (per curiam)), and its
application is committed to "the sound discretion of the trial court." *Id.* (citing *PSG Co. v.
Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 417 F.2d 659, 664 (9th Cir. 1969), *cert.
denied*, 397 U.S. 918 (1970)).  The Supreme Court has cautioned that courts generally
should grant leave to amend absent a showing of "undue delay, bad faith or dilatory motive
on the part of the movant, repeated failure to cure deficiencies by amendments previously
allowed, undue prejudice to the opposing party by virtue of allowance of the amendment,
[or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Rule 15(a) 'is to
be applied with extreme liberality,' and whether to permit amendment is a decision
'entrusted to the sound discretion of the trial court.'" *EFG Bank AG, Cayman Branch v.
Transam. Life Ins. Co.*, No. 216CV08104CASGJSX, 2019 WL 5784739, at *3 (C.D. Cal.
Nov. 4, 2019) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079
(9th Cir. 1990); *Jordan v. Cty. of Los Angeles*, 669 F.2d 1311, 1324 (9th Cir. 1982)).

The non-moving party bears the burden of showing why leave to amend should not
be granted.  *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989).

## II.    Analysis

"Generally speaking, a cause of action accrues at 'the time when the cause of action
is complete with all of its elements.'"  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797,
806–07 (2005) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)) (citing *Neel
v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 187 (1971)); *see also* Tr. at
3:20–22.  "For both negligence and strict products liability claims, the last element to occur
is generally, as a practical matter, the injury to the future plaintiff." *Fox*, 35 Cal. 4th at 806.

The statute of limitations for the Amending Plaintiffs' claims for negligence and
strict liability against US Foods is two years. *See* Cal. Civ. Proc. Code § 335.1.  Although

18-CV-1818 TWR (BLM)

the Amending Plaintiffs fell ill in October 2017, (*see* Mot. to Amend at 2), they first sought to add claims against US Foods on March 2, 2020, (*see id.* at 4), more than two years later. US Foods therefore contends that the Amending Plaintiffs' claims against it are time-barred. (*See, e.g.*, ECF Nos. 194–200).

However, "[a]n important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 35 Cal. 4th at 807 (citing *Norgart*, 21 Cal. 4th at 397; *Neel*, 6 Cal. 3d at 187). Consequently, by way of the instant Motion to Amend, the Amending Plaintiffs seek leave to file amended complaints in each of their respective member actions to add facts concerning the application of the discovery rule to toll the two-year statute of limitations. (*See* Mot. to Amend at 2.) US Foods opposes on two grounds: (1) the Amending Plaintiffs failed to plead the discovery rule in their First and Second Amended Complaints, thereby causing undue delay; and (2) the proposed amendments would be futile because the discovery rule is inapplicable on the facts of this case. (*See* US Foods Opp'n at 11–23.)

### A.    Undue Delay

In essence, US Foods contends that the Amending Plaintiffs unduly delayed by failing to plead the discovery rule in their earlier complaints against US Foods. (*See* US Foods Opp'n at 16.) While the Amending Plaintiffs could—and perhaps should—have added these allegations sooner, as US Foods itself acknowledges, "undue delay alone is generally insufficient to warrant denial of amendment." (*See id.* at 15 (citing *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, No. 18CV967-GPC(MSB), 2020 WL 1864781, at *6 (S.D. Cal. Apr. 14, 2020); *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1176 (E.D. Cal. 2013)). Accordingly, absent a finding of futility, *see infra* Section II.B, the Court should grant the Amending Plaintiffs' Motion.

### B.    Futility of Amendment

US Foods' main contention is that the Amending Plaintiffs' proposed amendments would be futile. (*See* US Foods Opp'n at 16–23.) Specifically, US Foods argues that the

Amending Plaintiffs' claims accrued no later than November 2017, when they were hospitalized and when they had sufficient facts to put them on notice as to their potential claims against US Foods. (*See id.* at 16–20.)  Further, US Foods asserts, the Amending Plaintiffs were not diligent in investigating their claims. (*See id.* at 20–23.)

The Amending Plaintiffs respond that *E. coli* is not always foodborne and that, although the CDC identified undercooked beef as a likely cause of the outbreak, the results of its investigation were not publicly available until the publication of the Healio article on April 24, 2018. (*See* ECF No. 228 ("Amend Reply") at 6–8.)  As for diligence, the Amending Plaintiffs contend that US Foods asks the Court to hold them to an unrealistic standard. (*See id.* at 8–9.)

"[T]o rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'"  *Fox*, 35 Cal. 4th at 808 (second alteration and emphasis in original) (quoting *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 151, 160 (1999)).  US Foods acknowledges that, "[n]ormally, whether a plaintiff has notice or information of circumstances to put a reasonable person on inquiry is a question of fact for the jury." (*See* US Foods Opp'n at 17 (quoting *Simpson v. Robert Bosch Tool Corp.*, No. 12-CV-05379-WHO, 2014 WL 985067, at *2 (N.D. Cal. Mar. 7, 2014) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988))).

At this juncture, accepting the Amending Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the Court cannot determine as a matter of law that the Amending Plaintiffs were able to discover the allegedly wrongful cause of their *E. coli* infection earlier with reasonable diligence.  Although "[a]ggrieved parties generally need not know the exact manner in which their injuries were 'effected, nor the identities of all parties who may have played a role therein,'" *Bernson v. Browning-Ferris Indus. of Cal., Inc.*, 7 Cal. 4th 926, 932 (1994) (quoting *Teitelbaum v. Borders*, 206 Cal. App. 2d 634, 639

(1962)), an action only accrues when an aggrieved party is aware that his or her injury had a wrongful cause.  *See Fox*, 35 Cal. 4th at 808 & n.2.  Consequently, "physical injury alone is often insufficient to trigger the statute of limitations."  *Id.* at 808 n.2.

In *Clark v. Baxter Healthcare Corporation*, for example, the nurse plaintiff began experiencing symptoms of a severe allergy to her latex gloves in 1992 and 1993.  *See* 83 Cal. App. 4th 1048, 1052, *as modified on denial of reh'g* (Oct. 20, 2000).  The plaintiff began using non-latex gloves when available in 1993, and in 1994, an allergist told her to avoid latex gloves because of a potential allergy.  *Id.* at 1052–53.  In 1995, the plaintiff suffered an anaphylactic reaction during a gynecological exam caused her gynecologist's latex gloves.  *Id.* at 1053.  The plaintiff then joined a "support and task force group" studying latex allergies and, at the end of 1995, read an article concerning latex allergies among healthcare workers.  *Id.*  It was only in 1996 that the plaintiff filed a products liability action against several manufacturers of latex gloves, alleging claims for fraudulent concealment, strict liability on either a manufacturing/design defect or failure to warn theory, and negligence.  *Id.* at 1053–54.  On the defendants' motion, the trial court granted summary judgment in their favor on statute of limitations grounds, concluding that the plaintiff had known—or should have known—that there was a problem with the latex gloves several years earlier.  *Id.* at 1055.

The Court of Appeal reversed, concluding that there existed triable issues of fact regarding when the plaintiff had become aware that a defendant's wrongdoing may have affected the gloves causing her allergies.  *See id.* at 1058–59.  The plaintiff had alleged a possible negligent cause of her injuries, such as a product defect or contamination, and the plaintiff's latex allergies alone would not have led her to suspect that the latex gloves had been defectively manufactured.  *See id.* at 1059–60.  Consequently, "[t]he record could support an inference that she did not become aware of a potential wrongfulness component of her cause of action until more information than the existence of her allergies placed her on inquiry notice," *id.* at 1060, such as her anaphylactic reaction or review of the academic article in 1995.  *See id.* at 1059–60.

Similarly, in *Rosas v. BASF Corporation*, the Court of Appeal reversed a grant of summary judgment in favor of the defendant where triable issues of fact existed as to whether a reasonable person would have suspected a wrongful cause for the plaintiff employee's lung condition, which was caused by chemicals used to make food flavorings. *See* 236 Cal. App. 4th 1378, 1394–96 (2015).  Although the plaintiff had seen a number of doctors—including a pulmonologist—over the years for his lung condition, none of the physicians believed that the plaintiff's exposure to chemicals at work was the cause of his illness.  *See id.* at 1395.  The court concluded that "it is reasonable to expect that a patient with no information about potential wrongdoing would rely on the assurance of a pulmonary physician that chemical exposure is only aggravating the person's symptoms, not causing his underlying disease." *Id.* at 1396.  The court also reasoned that "[t]his is not a scenario where the employee is working with chemicals that are recognized as being hazardous," but rather, "it would be reasonable to assume that chemicals used to make food flavorings intended for human consumption would be relatively safe."  *Id.*

Here, as in *Clark* and *Rosas*, the Amending Plaintiffs allege facts that they had no reason to suspect a wrongful cause to their physical ailment until a later date.  Specifically, although the Amending Plaintiffs were injured in October 2017, they allege that they did not discover, and could not have discovered, that their illnesses were the result of Defendants' alleged wrongdoing until the publication of the Healio article six months later. (*See* Proposed Abbott Compl. ¶¶ 56–59.)  The Amending Plaintiffs did not fall ill until several days after eating the allegedly contaminated food products, (*see* Proposed Abbott Compl. ¶ 11), and the various public health agencies involved, including the CDC, investigated not only the Marines' cafeterias and food preparation practices, but also the recruits' sleeping quarters and bathroom facilities.  (*See id.* ¶ 12.)  Further, although the CDC determined on January 23, 2018, that there was a statistically significant correlation between infection and the consumption of undercooked beef, (*see id.* ¶ 13), those conclusions were not publicized or made available to the recruits until the publication of the Healio article on April 24, 2018, (*see id.* ¶ 56), approximately three months later.

Although not necessary to the Court's conclusion, the CDC Report, which the Court may incorporate by reference into the Proposed Third Amended Complaints, *see supra* note 3, only strengthens the Amending Plaintiffs' allegations.  The CDC Report explicitly acknowledges that STEC outbreaks may be caused by a variety of factors, including ingestion of contaminated ground beef or leafy greens, contact with infected animals, or exposure to contaminated water.  (*See* Mot. to Amend Ex. H at 10.)  The CDC Report reveals that the CDC therefore investigated not only the recruits' exposure to meats and fresh produce, but also their hygiene and environmental practices.  (*See id.* at 5.)  The CDC also tested both food and environmental samples, neither of which revealed pathogens. (*See id.* at 7.)  Ultimately, the CDC Report did not find a definitive source for the outbreak, (*see id.* at 10), although the case-control study did reveal "[c]oncerning findings" about the recruits' hygiene and a statistically significant correlation between infection with *E. coli* and the ingestion of undercooked beef.  (*See* CDC Report at 8; *see also id.* at 10.)

On this record, reasonable minds could differ as to whether the Amending Plaintiffs could or should have been aware prior to the April 24, 2018 publication of the Healio article that the ingestion of allegedly undercooked, STEC-contaminated ground beef on October 21, 2017, caused their *E. coli* O157:H7 hospitalizations.  Accordingly, the Court **GRANTS** the Amending Plaintiffs' Motion to Amend.  *See, e.g.*, *Pereira v. Dow Chem. Co.*, 129 Cal. App. 3d 865, 874 (1982) (reversing grant of summary judgment in favor of defendant chemical manufacturers and distributors where the plaintiff suffered kidney damage as a result of a chemical spill but the spill "did not involve any perceptible trauma," "[n]o medical person told them that the kidney problem was caused by the spill," and the plaintiff first learned of the possible connection between the chemical spill and his illness upon review of his medical records); *Frederick v. Calbio Pharm.*, 89 Cal. App. 3d 49, 58 (1979) (reversing dismissal on demurrer where "[t]he allegations of the complaint adequately show that pathological effects [caused by the administration of an experimental drug leading to the decedent's death] occurred without perceptible trauma" and the plaintiffs "did not then have reason to suspect any perceptible relationship between the

administration of the drug and the death" until the Food and Drug Administration recalled the drug for that reason).

## MOTIONS TO DISMISS

Because the Court has granted the Amending Plaintiffs' Motion to Amend, it **DENIES AS MOOT** US Foods' Motions to Dismiss.

## MOTION TO STRIKE

### I.   Legal Standard

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)).

"Motions to strike are 'generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.'" *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (quoting *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)). "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsys., Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). "When ruling on a motion to strike, this Court 'must view the pleading under attack in the light most favorable to the pleader.'" *Id.* (citing *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005)).

"Unless it would prejudice the opposing party, courts freely grant leave to amend stricken pleadings." *Roe v. City of San Diego*, 289 F.R.D. 604, 608 (S.D. Cal. 2013) (citing Fed. R. Civ. P. 15(a)(2); *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979), *abrogated in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016))).

18-CV-1818 TWR (BLM)

## II. Analysis

Plaintiffs move to strike Sodexo's first (failure to state a claim), fourth (third-party responsibility), sixth (failure to mitigate), seventh (no product defect), eighth (good faith performance), ninth (lack of causation – substantial factor), tenth (estoppel), eleventh (lack of causation), twelfth (preemption), thirteenth (contractor immunity), fourteenth (contractual compliance), fifteenth (legal compliance), sixteenth (other medical conditions), seventeenth (no malicious conduct), eighteenth (no authorization or ratification), and twentieth (reservation of affirmative defenses) affirmative defenses on the grounds that they are not proper affirmative defenses and/or fail to provide adequate notice under Federal Rule of Civil Procedure 8.[5]  (*See* Mot. to Strike at 3–10.)

### A. Mootness

At the hearing, counsel for Sodexo "wonder[ed] if the Court was going to grant the motion to leave, if the Plaintiff's motion [to strike] became moot." (Tr. at 17:3–5.)  The Court agrees that the Motion to Strike is moot as to the Amending Plaintiffs; the Court therefore **DENIES AS MOOT** the Motion to Strike as to Plaintiffs Abbott, Anderson, Baker, Browning, Evers, Lader, and Miller.  Because Plaintiff Grano has not sought leave to file a further amended complaint, however, the Court nonetheless addresses the Motion to Strike on the merits as to Sodexo's Answer to Plaintiff Grano's Third Amended Complaint.

### B. Timeliness of Motion

As an initial matter, a motion to strike must be filed "within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f).  Although Plaintiffs timely filed the instant Motion to Strike after service of Sodexo's Answer to their operative Complaints, Plaintiffs argue that "Sodexo alleges many of the same boilerplate affirmative defenses that appeared in its answers to Plaintiffs' previous complaints," which "were deficient in the first instance

---

[5] Although Plaintiffs originally sought to strike Sodexo's third affirmative defense for contributory negligence, (*see* Mot. to Strike at 3–4), Plaintiffs' withdrew that challenge on reply.  (*See* ECF No. 230 ("Strike Reply") at 5.)

for failure to provide any factual support at all, much less the 'fair notice' required under Fed. R. Civ. Proc. 8, and . . . remain deficient in their current iterations, despite the passage of two years of litigation and the conduct of voluminous documentary and deposition discovery."  (Mot. to Strike at 2.)  Plaintiffs are correct—all of the affirmative defenses they now challenge, except for the seventeenth and eighteenth that pertain to Plaintiffs' newer punitive damages allegations, were first asserted in Sodexo's Answer to Plaintiff Grano's First Amended Complaint on October 5, 2018.  (*Compare* ECF No. 9 at 8–12, *with* Ans. at 31–36.)  Rather than lead the Court to question the sufficiency of Sodexo's affirmative defenses, however, this prompts the Court to question why Plaintiffs have waited nearly two years to litigate the issue.

"[Plaintiffs] could have acted more diligently and filed [their] motion to strike . . . earlier in response to [Defendant]'s original answer where the . . . defense[s] w[ere] originally pled."  *See Rutherford v. Evans Hotels, LLC*, No. 18-CV-435 JLS (MSB), 2019 WL 1900889, at *2 n.2 (S.D. Cal. Apr. 29, 2019) (alterations in original) (quoting *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 95 (D.N.J. 2014)).  Nonetheless, "[a]lthough this consideration may weigh in favor of finding the present Motion to be a delaying tactic . . . , '[s]tanding alone . . . , this lack of diligence by [Plaintiffs] is insufficient to deny the [timely] motion to strike.'"  *See id.* (third through sixth alterations in original) (quoting *Newborn Bros. Co.*, 299 F.R.D. at 95) (citing *Cortina*, 94 F. Supp. 3d at 1182; *SunEarth, Inc. v. Sun Earth Solar Power Co.*, No. C 11-4991 CW, 2012 WL 2326001, at *2 (N.D. Cal. June 19, 2012); *Raychem Corp. v. PSI Telecomms., Inc.*, No. CIV. C-93-20920 RPA, 1995 WL 108193, at *2 (N.D. Cal. Mar. 6, 1995)).  The Court therefore considers the Motion to Strike on the merits.

### C.   Negative and Non-Affirmative Defenses

Plaintiffs challenge Sodexo's first, seventh through ninth, eleventh, seventeenth, eighteenth, and twentieth affirmative defenses on the grounds that they are not proper affirmative defenses.  (*See* Mot. to Strike at 3, 4–6, 8–10.)  Sodexo does not dispute that these are not proper affirmative defenses, (*see* ECF No. 213 ("Sodexo Opp'n") at 7–8,

14

10–13, 16–17), and also acknowledge that their fifteenth and sixteenth defenses are not affirmative defenses.  (*See id.* at 15–16.)

Because "[a] defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense," *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (citing *Flav-O-Rich v. Rawson Food Serv., Inc. (In re Rawson Food Serv., Inc.)*, 846 F.2d 1343, 1349 (11th Cir. 1988)), the Court **GRANTS** Plaintiffs' Motion to Strike and **STRIKES WITH PREJUDICE** Sodexo's first, seventh through ninth, eleventh, and fifteenth through eighteenth affirmative defenses as to Plaintiff Grano.  *See, e.g.*, *Gomez v. J. Jacobo Farm Labor Contr., Inc.*, 188 F. Supp. 3d 986, 995 (E.D. Cal. 2016) (striking with prejudice defenses for failure to state a claim); *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1173–75, 1176 (N.D. Cal. 2010) (striking with prejudice negative and non-affirmative defenses).  Further, because "[t]he mere reservation of affirmative defenses is not an affirmative defense," *Kohler v. Staples the Office Superstore, LLC*, 291 F.R.D. 464, 473 (S.D. Cal. 2013) (internal quotation marks omitted) (quoting *E.E.O.C. v. Timeless Invs., Inc.*, 734 F. Supp. 2d 1035, 1055 (E.D. Cal. 2010)), the Court **GRANTS** Plaintiffs' Motion to Strike and **STRIKES WITH PREJUDICE** Sodexo's twentieth affirmative defense as to Plaintiff Grano.  *See id.*

### D.  Failure to Provide Adequate Notice

Plaintiffs also move to strike Sodexo's fourth, sixth, tenth, and twelfth through fourteenth affirmative defenses for failure to provide fair notice.  (*See* Mot. to Strike at 4, 6–8.)

#### 1.  Fourth Affirmative Defense: Third-Party Responsibility

Sodexo's fourth affirmative defense provides:

> The accident, injury, and damages alleged in the Third Amended Complaint were either wholly or in part proximately caused by the negligence and fault of persons, corporations or entities other than the answering Defendant and the negligence of such other

persons, corporations, and/or entities comparatively reduces the
percentage of negligence, if any, attributed to this Defendant.

(Ans. at 32.)  Plaintiffs contend that Sodexo "fails to identify which 'persons, corporations,
or entities' engaged in the alleged wrongful conduct, or what the wrongful conduct
consisted of," meaning "this defense does not give sufficient notice to plaintiffs." (Mot. to
Strike at 4 (citing *Gomez*, 188 F. Supp. 3d at 992).)  Sodexo responds that its "answers
expressly allege that Sodexo was without fault and that, to the extent that a jury finds that
Plaintiffs' *E. coli* infections were cause[d] by contaminated hamburgers, Sodexo received
all such hamburgers from Cargill . . . through its distributor, US Foods." (Sodexo Opp'n
at 9 (citing 19cv1909 ECF No. 57 ¶¶ 19–21).)

Sodexo's clarification in its Opposition cannot "cure the deficiency in [its] Answer."
*See Shellabarger v. Dicharry*, No. 2:13-CV-00188-TLN, 2014 WL 5797194, at *3 (E.D.
Cal. Nov. 6, 2014).  As pled, Sodexo's fourth affirmative defense "does not even assert, at
a minimum, who these other persons were." *See Fed. Trade Comm'n v. Loss Mitigation
Servs.*, No. SACV09800DOCANX, 2010 WL 11519447, at *2 (C.D. Cal. Feb. 17, 2010).
The Court therefore **GRANTS** Plaintiffs' Motion to Strike and **STRIKES WITHOUT
PREJUDICE** Sodexo's fourth affirmative defense as to Plaintiff Grano.

### 2.    *Sixth Affirmative Defense: Failure to Mitigate*

Sodexo's sixth affirmative defense alleges "[t]hat[,] by the exercise of reasonable
effort, the Plaintiff could have mitigated the amount of damages they suffered, but Plaintiff
failed and refused, and continues to fail and refuse, to exercise a reasonable effort to
mitigate the damages." (Ans. at 32.)  Plaintiffs contend that this affirmative defense fails
to provide sufficient notice because Sodexo "does not identify with any degree of
specificity any action or inaction by Plaintiffs." (Mot. to Strike at 4.)  Sodexo rejoins that
it "is not required to include detailed facts in its pleadings to support its affirmative
defenses," (Sodexo Opp'n at 9), and that the facts underlying this defense are available in
each Plaintiff's "medical, psychological, educational, and employment records that

/ / /

18-CV-1818 TWR (BLM)

Plaintiffs have produced in discovery," meaning "Plaintiffs already have fair notice of the factual bases for Sodexo's failure to mitigate defense." (*Id.* at 10.)

"Although a generalized statement may be sufficient for purposes of pleading a mitigation defense, the Court agrees with [Plaintiffs] that [Sodexo] fails to make even a generalized statement that [Plaintiffs] failed to mitigate." *See Snap! Mobile, Inc. v. Croghan*, No. 18-CV-04686-LHK, 2019 WL 884177, at *5 (N.D. Cal. Feb. 22, 2019). The Court therefore **GRANTS** Plaintiffs' Motion to Strike and **STRIKES WITHOUT PREJUDICE** Sodexo's sixth affirmative defense as to Plaintiff Grano. *See id.*; *see also, e.g.*, *Kohler v. Staples the Office Superstore, LLC*, 291 F.R.D. 464, 469 (S.D. Cal. 2013) (striking without prejudice affirmative defense for failure to mitigate where the defendant's "answer gives no notice to [the plaintiff] of the basis of his alleged failure to mitigate").

### 3. *Tenth Affirmative Defense: Estoppel*

As its tenth affirmative defense, Sodexo claims that,

> [a]s a separate and affirmative defense to all causes of action alleged in the Third Amended Complaint on file herein, this answering Defendant is informed and believes, and thereon alleges, that Plaintiff is estopped from recovery on the Third Amended Complaint on file herein by virtue of the conduct of Plaintiff.

(Ans. at 33.) Plaintiffs argue that this affirmative defense is insufficient because Sodexo "fails to identify any 'conduct of Plaintiff' on which the defense rests." (Mot. to Strike at 6.) Sodexo responds that "the CDC Report cited through Plaintiffs' complaints provides them with sufficient factual background." (Sodexo Opp'n at 12.)

The Court agrees with Plaintiffs that Sodexo's estoppel defense, as currently pled, is insufficient. Not only does Sodexo fail to identify Plaintiffs' "conduct," but it also fails to allege the elements of estoppel. *See, e.g.*, *Whiting v. City of Palm Desert*, No. EDCV1701395JGBKKX, 2018 WL 6034968, at *4 (C.D. Cal. May 17, 2018) (striking without prejudice estoppel defense for failure to allege essential elements) (citing *Mattox v. Watson*, No. CV 07-5006-RGK RZX, 2007 WL 4200213, at *5 (C.D. Cal. Nov. 15,

2007)).  Accordingly, the Court **GRANTS** Plaintiffs' Motion to Strike and **STRIKES WITHOUT PREJUDICE** Sodexo's tenth affirmative defense as to Plaintiff Grano.

### 4.    *Twelfth Affirmative Defense: Preemption*

Sodexo's twelfth affirmative defense provides that, "[a]s a separate and affirmative defense to all causes of action alleged in the Third Amended Complaint on file herein, this answering Defendant asserts that each of Plaintiff's claims concerning violations of general state and federal law and regulations are preempted by the terms of the Tri-Service Food Code."  (Ans. at 34.)  Plaintiffs urge that, "[w]ithout providing supporting information as to how the Tri-Service Food Code preempts 'general state and federal law,' the defense fails to provide adequate notice."  (Mot. to Strike at 7.)  Sodexo counters that "this is a pure legal contention" and "Rule 8 does not require Sodexo to provide its attorneys' legal analysis."  (Sodexo Opp'n at 13.)

Although Sodexo's defense could be more detailed, because Sodexo identifies the law forming the basis for its preemption defense, the Court concludes that Sodexo has provided Plaintiffs fair notice.  *See, e.g.*, *Craten v. Foster Poultry Farms Inc.*, No. CV-15-02587-PHX-DLR, 2016 WL 3457899, at *4 (D. Ariz. June 24, 2016) (finding preemption defense sufficiently pled where the defendant alleged that the "[p]laintiff's claims are preempted by the federal Poultry Products Inspection Act, 21 U.S.C. § 451 *et seq.*, and related federal regulations, including . . . 21 U.S.C. § 467e") (second alteration in original); *Miller v. Ghirardelli Chocolate Co.*, No. C 12-04936 LB, 2013 WL 3153388, at *4 (N.D. Cal. June 19, 2013) (declining to strike preemption defense alleging that "[t]he claims are barred to the extent that they are preempted by federal law, including specifically by FDA labeling requirements and the prohibition on private rights of action to enforce FDA rules") (alteration in original).  Accordingly, the Court **DENIES** Plaintiffs' Motion to Strike Sodexo's twelfth affirmative defense as to Plaintiff Grano.

/ / /

/ / /

/ / /

5.      *Thirteenth and Fourteenth Affirmative Defenses: Government Contractor Defense*

Sodexo's thirteenth and fourteenth affirmative defenses are both iterations of the government contractor defense. *See, e.g.*, *In re Hanford Nuclear Reserv. Litig.*, 534 F.3d 986, 1000 (9th Cir. 2008) ("The [government contractor] defense allows a contractor-defendant to receive the benefits of sovereign immunity when a contractor complies with the specifications of a federal government contract.") (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 511–12 (1988)).  In its thirteenth affirmative defense, Sodexo alleges:

> As a separate and affirmative defense to all causes of action alleged in the Third Amended Complaint on file herein, this answering Defendant is informed and believes that each of Plaintiff's claims against it are barred in their entirety by Defendant's immunity enjoyed by virtue of its status as a government contractor.

(Ans. at 34.)  Sodexo's fourteenth affirmative defense similarly provides:

> As a separate and affirmative defense to all causes of action alleged in the Third Amended Complaint on file herein, this answering Defendant is informed and believes that each of Plaintiff's claims against it are barred because Defendant complied with the specifications set out in its contract with the United States Marine Corps.

(*Id.*)  Plaintiffs contend that both of these defenses must be stricken because Sodexo "fails to identify any applicable laws, regulations, authority, or other bases supporting the alleged bar to Plaintiffs' claims."  (Mot. to Strike at 7–8 (citing *Kohler v. Islands Rests., LP*, 280 F.R.D. 560, 568 (S.D. Cal. 2012)).)  Sodexo responds that its thirteenth affirmative defense "is a legal contention and Plaintiffs already have all the factual information they need to evaluate the contention" based on the allegations in their own complaints regarding "Sodexo's Foodservice Contract with the Marine Corps" and Sodexo's contention that it is a government contractor.  (*See* Sodexo Opp'n at 14.)  As for its fourteenth affirmative defense, Sodexo contends that its prior opposition to Plaintiffs' motion for leave to file

amended complaints "explained that, pursuant to its contract with the Marine Corps, the Marine Corps 'controls the recipes that Sodexo makes, including the hamburger recipe . . . along with the mandated meal service schedule,'" (*id.* (citing ECF No. 173 at 1)), which provides fair notice.  (*Id.* at 14–15 (citing *Wyshak*, 607 F.2d at 827).)

The Court concludes that Sodexo's thirteenth and fourteenth affirmative defenses are sufficiently pled to provide fair notice to Plaintiffs.  *See, e.g.*, *O'Connor v. Boeing N. Am., Inc.*, No. CV 00-0186 DT RCX, 2005 WL 6035256, at *10 (C.D. Cal. Aug. 9, 2005) (denying motion to strike defendant alleging that the "[d]efendant is immune from suit in this action because [the p]laintiffs' claims arise from [the d]efendants' manufacture of products and other activities for the United States Government . . . in strict accordance with detailed Government specifications, at the direction and discretion of Government officers").  Accordingly, the Court **DENIES** Plaintiffs' Motion to Strike Sodexo's thirteenth and fourteenth affirmative defenses as to Plaintiff Grano.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** the Amending Plaintiffs' Motion to Amend (ECF No. 191) and **DENIES AS MOOT** US Foods' Motions to Dismiss (ECF Nos. 194–200).  The Amending Plaintiffs **SHALL FILE** their Third Amended Complaints in their respective member cases within seven (7) days of the electronic docketing of this Order, and Defendants **SHALL RESPOND** to the Third Amended Complaints pursuant to Federal Rule of Civil Procedure 15(a)(4).

The Court also **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Strike (ECF No. 187).  Specifically, the Court **DENIES AS MOOT** the Motion to Strike as to Plaintiffs Abbott, Anderson, Baker, Browning, Evers, Lader, and Miller; **STRIKES WITH PREJUDICE** Sodexo's first, seventh, eighth, ninth, eleventh, fifteenth, sixteenth, seventeenth, eighteenth, and twentieth affirmative defenses as to Plaintiff Grano (ECF No. 184); and **STRIKES WITHOUT PREJUDICE** Sodexo's fourth, sixth, and tenth affirmative defenses as to Plaintiff Grano (ECF No. 184).  Sodexo **MAY FILE** an amended

/ / /

answer to Plaintiff Grano's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(a)(4)(A).

   **IT IS SO ORDERED.**

Dated:  December 3, 2020

Honorable Todd W. Robinson
United States District Court

18-CV-1818 TWR (BLM)