UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT GRANO, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>SODEXO MANAGEMENT, INC., et al.,<br><br>  Defendants.<br><br>AND RELATED CASES | Case Nos.:  18cv1818-TWR(BLM)<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION TO DETERMINE SUFFICIENCY OF CARGILL'S RESPONSES TO PLAINTIFFS' SECOND REQUESTS FOR ADMISSION**<br><br>**[ECF NO. 240]** |

Currently before the Court is Plaintiffs' November 4, 2020 Motion to Determine Sufficiency of Cargill's Responses to Plaintiffs' Second Requests for Admission [ECF No. 240-1 ("Mot.")], Defendant Cargill Meat Solutions Corp.'s November 18, 2020 opposition to the motion [ECF No. 245 ("Oppo.")], and Plaintiffs' November 24, 2020 reply [ECF No. 250 ("Reply")].  For the reasons set forth below, Plaintiffs' motion is **GRANTED IN PART**.

**DISCOVERY RELATED BACKGROUND**

On September 10, 2020, Plaintiffs served their Second Requests for Admission ("RFA") on Defendant Cargill.  ECF No. 240-2, Declaration of R. Drew Falkenstein in Support of Plaintiffs' Motion to Determine Sufficiency of Cargill's Responses to Plaintiffs' Second Requests for Admission ("Falkenstein Decl.") at ¶ 2, Exh. A.

On October 12, 2020, Defendant Cargill served its responses to the RFAs.  Id. at ¶ 3, Exh.

B. That same day, Plaintiffs' counsel sent Cargill an initial meet and confer email to which Cargill's counsel responded. Id. at ¶ 4a, Exh. C. On October 13, 2020, Plaintiffs' counsel sent as second meet and confer letter to Cargill addressing his substantive concerns with Cargill's responses, requesting that Cargill supplement or revise its responses, and requesting a telephonic meet and confer. Id. at ¶ 4b, Exh. D. Cargill's counsel responded on October 16, 2020 and the parties held an unsuccessful telephonic meet and confer that same day. Id. at ¶¶ 4c and 4d, Exh. E.

On October 19, 2020, counsel for Defendant Cargill, Ms. Bullard and Mr. Bylund, and counsel for Plaintiffs, Mr. Falkenstein, jointly contacted the Court regarding the discovery dispute concerning the RFAs. ECF No. 229. In regard to the dispute, the Court issued a briefing schedule. Id. In accordance with that schedule, the parties timely filed their motion, opposition, and reply. Id.; see also Mot., Oppo., and Reply.

## **LEGAL STANDARD**

"A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 36(a)(1). "Each matter must be separately stated." Fed. R. Civ. P. 36(a)(2). A responding party must admit a matter, specifically deny a matter, or state in detail why they cannot truthfully admit or deny it. Fed. R. Civ. P. 36(a)(4). If a matter is denied, the "denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Id. A responding party may object to a request if they state the ground for the objection. Fed. R. Civ. P. 36(a)(5). The requesting party may then seek a decision from the court determining the sufficiency of an answer or objection. Fed. R. Civ. P. 36(a)(6). The court must order that an answer be served unless it finds an objection justified. Id. "On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." Id. An order deeming matters admitted is a "severe sanction." Black

Mountain Equities, Inc. v. Players Network, Inc., 2020 WL 2097600, at *10 (S.D. Cal., May 1, 2020) (citing Asea, Inc. v. S. Pac. Transp. Co., 669 F.2d 1242, 1247 (9th Cir. 1981) (vacating district court's order deeming RFAs admitted because it was a "severe sanction" that required a showing "that a party has intentionally disregarded the obligations imposed by Rule 36(a)" and the district court did not state a basis for finding "that the [defendant] did not make reasonable inquiry or that the information readily obtainable was sufficient to allow them to admit or deny the particular requests"). The Ninth Circuit has observed that "courts generally order an amended answer rather than deem the matter admitted." Id. at *10 (citing Asea, Inc., 669 F.2d at 1246).

## PARTIES' POSITIONS

Plaintiffs seek an order from the Court striking Cargill's objections and answers to Plaintiffs' Second RFAs Nos. 14-21 and requiring Cargill to answer each RFA as written. Mot. at 5. Plaintiffs argue that Cargill's responses to the RFAs are deficient because they

> (1) employ boilerplate, inappropriate objections to specifically defined terms, (2) ignore specifically defined terms, (3) substitute specifically defined terms out and, in narrative fashion, premise denials on different terms that inappropriately introduce concepts that Plaintiffs specifically sought to avoid, and (4) explicitly premise each denial on its stated objections.

Id. Specifically, in responding to its RFAs, Cargill improperly removed the term "elimination step"[1] and substituted it with "a narrative discussion of 'lethality treatment,' which is a defined term at 9 C.F.R § 430.1."[2] Mot. at 3. Plaintiffs note that the term lethality treatment introduces

---

[1] Plaintiffs define the term as:

> Elimination-step includes any treatment applied to, or action taken with respect to, any raw beef components that you utilized to produce the subject ground beef products, or to the finished subject ground beef products themselves, to eliminate (i.e., reduce to zero) any viable pathogens via thermal, chemical, biological, or mechanical process. The term "elimination-step" includes specifically, but not exclusively, irradiation.

Falkenstein Decl. at Exh. A.

[2] Lethality treatment is "[a] process, including the application of an antimicrobial agent, that eliminates or reduces the number of pathogenic microorganisms on or in a product to make the

3

18cv1818-TWR(BLM)

concepts that they intentionally sought to avoid in the wording of their RFAs and permits Cargill to avoid responding to the questions Plaintiffs want to ask. Id. Plaintiffs also argue that Fed. R. Civ. P. 36 does not permit Cargill to rewrite Plaintiffs' specifically defined term and fundamentally alter the meaning of the request. Id. at 4. Fed. R. Civ. P. 36(a)(4) required Cargill to admit or specifically deny each RFA or state in detail why it could not, which it failed to do, instead relying on improper boilerplate objections. Id. at 5. Plaintiffs argue that Cargill's objections to the term "subject ground beef products" were improper given that it refers "definitively and without question" to the ground beef patties Cargill produced.[3] Id. at 5-6. Plaintiffs further argue that additional objections to the RFAs raised in Cargill's October 16, 2020 meet and confer letter do not excuse Cargill from truthfully admitting or denying the RFAs at issue. Id. at 7. Specifically, contrary to the statements of Cargill's counsel, the RFAs were simple, narrow, and concise and the use of the term elimination-step was appropriate. Id. Finally, Plaintiffs argue that "Cargill's responses improperly introduce narrative about its observance of the industry standard of care." Id. at 10.

Cargill contends that Plaintiffs' motion should be denied because its objections and responses are proper under Fed. R. Civ. P. 36. Oppo. at 12. Cargill contends that its responses are proper, clear denials and that its objections are proper given the compound and convoluted nature of Plaintiffs' RFAs and because the RFAs are vague, ambiguous, and overbroad. Id. at 12-14. Cargill further contends that Plaintiffs' motion should be denied because it asks the Court

---

product safe for human consumption. Examples of lethality treatments are cooking or the application of an antimicrobial agent or process that eliminates or reduces pathogenic microorganisms." Mot. at 3.

[3] Plaintiffs defined "subject ground beef products" as

> "Subject ground beef products" are the frozen ground beef patties 80/20, Cargill product number 771853, which Sodexo identifies as product number 5922877, that were shipped to Sodexo pursuant to invoice number 5115243, dated October 17, 2017.

Falkenstein Decl. at Exh. A.

to order Cargill to respond to RFAs that Plaintiffs wish they had asked instead of the RFAs they served. Id. at 17.

Plaintiffs reply that the Court should order Cargill to answer the RFAs "none of which were in any way improper or unclear." Reply at 2. Plaintiffs argue that Cargill's "denials are premised on (1) objections that Plaintiffs believe are improper and without foundation, and (2) narrative dicta that is simply irrelevant and changes the meaning of the several requests." Id. at 3. Plaintiffs further argue that the only issue is whether Defendant's processes include an elimination step as defined by Plaintiffs and Cargill's responses do not address that issue. Id. Plaintiffs note that Cargill does not claim it is unable to understand the defined terms or the RFAs, only that the terms are not commonly used in the food industry and make the requests compound. Id. at 5.

## DISCUSSION

Requests for admission "may not contain compound, conjunctive, or disjunctive (e.g., "and/or") statements." U.S. ex rel. Englund v. Los Angeles Cty., 235 F.R.D. 675, 684 (E.D. Cal. 2006) (citing Herrera v. Scully, 143 F.R.D. 545, 549 (S.D.N.Y. 1992)). However, "[a] party may not avoid responding based on technicalities. For example, a party who is unable to agree with the exact wording of the request for admission should agree to an alternate wording or stipulation." Id. (internal citations omitted) (citing Marchand v. Mercy Med. Ctr., 22 F.3d 933, 938 (9th Cir. 1994), citing Milgram Food Stores, Inc. v. United States, 558 F. Supp. 629, 636 (W.D. Mo. 1983)). When the purpose and significance of a request are reasonably clear, courts do not permit denials based on an overly-technical reading of the request. Id. "It is not ground for objection that the request is 'ambiguous' unless so ambiguous that the responding party cannot, in good faith, frame an intelligent reply. Parties should 'admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted.'" Id. at 685 (quoting Marchand, 22 F.3d at 938).

The first four paragraphs of Cargill's response to RFA Nos. 14-20[4] are identical and state:

---

[4] RFA No. 14 asked Cargill to "[a]dmit that your HACCP plan did not include any elimination-step for the production of the subject ground beef products." Falkenstein Decl. at Exh. B. RFA No.

> Cargill objects to this Request as vague, ambiguous, and overbroad as to its use of the terms "elimination-step" and "subject ground beef products." These terms are not defined within this Request and require reference back to another section within Plaintiff's Second Requests for Admissions to attempt to discern their meaning and impact.
>
> "Elimination-step" is not a commonly used or understood term within the food industry or applicable regulations. The Request may reflect a failed attempt to refer to "lethality treatment," which is defined under 9 C.F.R. § 430.1 of the Food Safety and Inspection Service ("FSIS") of the USDA as "[a] process, including the application of an antimicrobial agent, that eliminates or reduces the number of pathogenic microorganisms on or in a product to make the product safe for human consumption. Examples of lethality treatments are cooking or the application of an antimicrobial agent or process that eliminates or reduces pathogenic microorganisms."
>
> Further, there are no "subject ground beef products" as no chain of custody has been established in this litigation to date. Therefore, Cargill understands and interprets this term to generally refer to the alleged type of product at issue in this litigation, Cargill's ground beef patties 80/20 (Cargill product number 771853).[5]
>
> Subject to these objections, DENIED.

Falkenstein Decl. at Exh. B.[6]

---

15 asked Cargill to "[a]dmit that you applied no elimination-step to any raw ground beef components used to produce the subject ground beef products." Id. RFA No. 16 asked Cargill to "[a]dmit that you did not require any supplier of raw ground beef components, used to produce the subject ground beef products, to apply any elimination-step to the raw ground beef components supplied." Id. RFA No. 17 asked Cargill to "[a]dmit that the suppliers of raw ground beef components, used to produce the subject ground beef products, did not apply any elimination-step to any raw ground beef components used to produce the subject ground beef products." Id. RFA No. 18 asked Cargill to "[a]dmit that you applied no elimination-step to the subject ground beef products." Id. RFA No. 19 asked Cargill to "[a]dmit that no other entity applied any elimination-step to the subject ground beef products." Id. RFA No. 20 asked Cargill to "[a]dmit that an elimination-step applied to raw ground beef components is the only way to ensure that raw ground beef components do not contain any STEC." Id.

[5] This paragraph does not appear in Cargill's response to RFA No. 20.

[6] Cargill's response to RFA No. 18 states: "DENIED. See Response to Request No. 14, which is incorporated herein by reference." Falkenstein Decl. at Exh. B. Cargill's response to RFA Nos. 16 and 17 states "DENIED. See Response to Request No. 15, which is incorporated herein by reference." Id.

Following these identical objections, explanations, and denials, Cargill set forth additional paragraphs that varied by RFA. Id. Cargill's response to RFA Nos. 14 and 18 ends stating:

> Cargill's HACCP plan for its raw ground beef products processed at its North Butler Plant in Butler, Wisconsin satisfies the FSIS regulatory requirements. A true and accurate copy of this HACCP Plan that was in effect in October 2017 was produced at CMS00000333. This HACCP plan addresses treatments for its ground beef patties 80/20 (Cargill product number 771853), including affixing a label onto the shipped product with instructions to cook the product to 160 degrees F internally. See CMS00000333 at 7.3.3.2.

Id. Cargill's response to RFA Nos. 15 -17 concludes by stating:

> Cargill employs multiple steps to process raw ground beef components used to produce its ground beef patties 80/20 (Cargill product number 771853) to eliminate or reduce pathogenic microorganisms, including, without limitation, heating, steam pasteurization, freezing/chilling, lactic acid rinse, and/or disposing of presumptive positive testing product of the raw ground beef components. See Cargill's Harvest HACCP Plans at CMS00006257-CMS00006262; CMS00006311-CMS00006319; CMS00007521-CMS00007575. Cargill's operation as an FSIS inspected food processor, its practices and procedures, prerequisite programs, good manufacturing practices, sanitation procedures, interventions and treatments and HACCP plans are appropriate safeguards.

> In addition, Cargill affixes a label onto the shipped product of ground beef patties 80/20 (Cargill product number 771853) with instructions to cook the product to 160 degrees F internally. See CMS00000333 at 7.3.3.2.

Id. Cargill's response to RFA No. 19 concludes by stating:

> Cargill's suppliers are regulated, as is Cargill, by the FSIS. Cargill's suppliers have practices and procedures, prerequisite programs, good manufacturing practices, sanitation procedures, interventions and treatments and HACCP plans to safeguard their products.

> Cargill's food service customers, including Sodexo, are also regulated and subject to obligations requiring the appropriate storage and preparation of ground beef. Compliance with these obligations, including the preparation of the products to the legally required and instructed temperature, would eliminate any potential pathogen present in the product.

1   Id. RFA No. 20 concludes by stating:

> Cargill's suppliers are FSIS inspected facilities, who have practices and procedures, prerequisite programs, good manufacturing practices, sanitation procedures, interventions and treatments and HACCP plans that constitute appropriate safeguards. Cargill and its suppliers engage in FSIS approved testing programs to further ensure ingredients are free of STEC. Finally, Cargill also affixes a label onto its shipped ground beef products with instructions to cook the product to 160 degrees F internally (See CMS00000333 at 7.3.3.2), that if so followed will ensure the absence of STEC in the ground beef products.

Id.

Initially, the Court overrules Cargill's objections in the first paragraph of its responses that the terms "elimination-step" and "subject ground beef products" are vague, ambiguous, overbroad, and improperly reference a different portion of the RFA request. The Court finds that Plaintiffs' definitions are properly set forth in the RFA request and are reasonably clear. See U.S. ex rel. Englund, 235 F.R.D at 685. The Court also denies as moot Cargill's objections to the term "subject ground beef products" because it appears that both Plaintiffs and Cargill are referring to the same products. The Court notes that Cargill does not contend that it cannot form an intelligent response to the RFAs using the defined terms, it merely challenges the validity, accuracy, and admissibility of the terms. The Court denies as premature Cargill's argument in the second paragraph of their responses that the correct standard is "lethality treatment" not "elimination-step." Fed. R. Civ. P. 26(b)(1) specifically states that "discovery need not be admissible in evidence to be discoverable." While the "elimination-step" definition and related evidence may not be admissible at trial, the Court finds that the subject RFAs seek relevant and permissible information for discovery purposes. Finally, the Court also denies as premature Cargill's argument in the third paragraph that Plaintiffs have not established the required chain of custody for the products at issue in this litigation. As discussed above, Rule 26 does not require this proof for discovery purposes.

Cargill denied RFA Nos. 14-20, however, it is unclear whether Cargill denied the RFAs using Plaintiffs' definitions or denied them using Cargill's preferred term of "lethality treatment." Accordingly, the Court **STRIKES** the responses to RFA Nos. 14-20 and **ORDERS** Cargill to serve

new responses no later than **December 23, 2020** using Plaintiffs' definitions for "elimination-step" and "subject ground beef products."  Pursuant to Fed. R. Civ. P. 36, if Cargill does not admit a matter, it must

> specifically deny it or state in detail why [Cargill] cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that [Cargill] qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.  [Cargill] may assert lack of knowledge or information as a reason for failing to admit or deny only if [Cargill] states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4).  In accordance with Rule 36(a)(4), if Cargill's amended responses require a qualified response, such as the paragraph(s) set forth after the denial in the original responses, Cargill may include the required qualification.

RFA No. 21 asked Cargill to "[a]dmit that you cannot ensure the absence of STEC in your ground beef products." Falkenstein Decl. at Exh. B.  Cargill did not object to the RFA and responded

> DENIED. Cargill's operation as an FSIS inspected food processor, its practices and procedures, prerequisite programs, good manufacturing practices, sanitation procedures, interventions and treatments and HACCP plans are appropriate safeguards. Cargill also affixes a label onto its shipped ground beef products with instructions to cook the product to 160 degrees F internally (See CMS00000333 at 7.3.3.2), that if so followed will ensure the absence of STEC in the ground beef products.

Id.  Plaintiffs' request to have Cargill's response to RFA No. 21 stricken is **DENIED**.  Cargill denied the RFA without objection.

**IT IS SO ORDERED**.

Dated:  12/10/2020

Hon. Barbara L. Major
United States Magistrate Judge